UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| SOUTH DAKOTA STATE MEDICAL HOLDING COMPANY, INC., d/b/a DAKOTACARE, | ) ) ) ) | CIV. 06-5038-KES |
| Plaintiff, | ) ) ) | ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |
| vs. | ) ) | |
| JANET HOFER, | ) ) | |
| Defendant. | ) ) | |

Plaintiff, South Dakota State Medical Holding Company, Inc. d/b/a/ DakotaCare (DakotaCare) seeks an equitable lien, and in the alternative the imposition of a constructive trust, on funds obtained by defendant Janet Hofer (Hofer) from Dairyland Insurance Company (Dairyland), pursuant to 29 U.S.C. § 1132(a)(3). DakotaCare and Hofer filed cross motions for summary judgment. DakotaCare's motion for summary judgment is granted.

**FACTUAL BACKGROUND**

On September 11, 2004, Hofer was injured in an accident while riding as a passenger on a motorcycle driven by her husband, Terry Hofer. PSMF 7. Hofer sustained severe injuries as a result of the accident that have resulted in excess of $400,000 in medical expenses to date. PSMF 8.

Terry Hofer is a partner in the Bangs, McCullen Law Firm. In 2004, Bangs, McCullen entered into an agreement with DakotaCare to provide health maintenance benefits for employees and eligible dependents for the period of

January 1, 2004, through December 31, 2004.  PSMF 4.  Both Terry Hofer and Janet Hofer were members of the DakotaCare plan (Plan).  PSMF 6.  In relevant part, the Plan states "the term Member shall apply to both the Employee or Member of the Enrolling Unit and may be used to include the Eligible Dependents of the Member of the Enrolling Unit in the event Dependent Coverage is in effect."  Docket 41, Ex. 6 at 7.  Section X of the Plan states:

> DAKOTACARE shall discharge its liability under this Contract by payment on behalf of a Member to a Participating Provider or to the Member.  All benefits stated in the Contract are personal to the Member.  Benefits payable hereunder may not be assigned by a Member to any person, institution, or entity unless otherwise permitted by a statute of the State of South Dakota and that person, institution, or entity is licensed by the State of South Dakota.

Id. at 27.

The general provisions of the Plan state "DAKOTACARE shall retain discretionary authority to determine eligibility for benefits and to construe the terms and conditions of this contract."  Id. at 34.  To date, DakotaCare has paid benefits of approximately $414,000 to Hofer, pursuant to her rights under the Plan.

Terry Hofer maintained a motorcycle liability policy with Dairyland Insurance Company.  The Dairyland policy states, "[t]his insurance covers bodily injury, including loss of services, sickness, disease or death which results from the injury, caused by a *motorcycle accident* suffered by persons other than passengers and those who are passengers, if passenger coverage is

shown as included on the declarations page." Docket 41, Ex. 18 at 13-14 (emphasis in original). The declaration page for the motorcycle policy includes passenger coverage. Id. at 25. In addition, the motorcycle amendatory endorsement states:

> The liability insurance of this policy doesn't apply to bodily injuries or property damage suffered by *you* or a member of the family who is a resident of the household. However, this exclusion does not apply to bodily injuries or property damages suffered by *you* to the extent that this coverage provides the limits of liability required by the Financial Responsibility Law of the state of South Dakota.

Id. at 2. The motorcycle policy further defines "you" as "the person named on the declarations page and that person's husband or wife if a resident of the same household." Id. at 11.

Hofer ultimately obtained a $250,000 settlement from Dairyland. In the release dated April 8, 2005,[1] Hofer acknowledged that the $250,000 she received represented the policy limits of the motorcycle insurance policy and released Dairyland from future liability arising out of the September 11, 2004, motorcycle accident. Docket 33, Ex. A. Hofer reserved the right to pursue a judgment against Terry Hofer in the release. Id. Hofer also "agree[d] to be solely responsible for satisfying the subrogation claim of DakotaCare and any other subrogation claims or medical liens arising out of any payments made

---

[1] A second release, dated March 15, 2005, is also in the record. DakotaCare asserts that it never accepted the earlier release. The second release is for all practicable purposes identical to the first, and therefore, the status of the earlier release is not significant.

because of the treatment or expenses incurred by the claims as a result of this accident." Id.

The funds obtained from Dairyland are being held by Hofer in two traceable and identifiable funds. PSMF 13. Subsequent to the receipt of the settlement funds, Hofer notified DakotaCare that she would hold the funds in two separate accounts pending the disposition of any claim DakotaCare might assert. Docket 33, Ex. B.

DakotaCare asserts that it has a legal interest in the $250,000 pursuant to the subrogation and reimbursement provisions in the Plan. Section IX, ¶ 5.a. of the Plan states:

> If DAKOTACARE provides benefits to any Member and the Member has the right to recover any amount which DAKOTACARE has paid from any third party or any insurer including underinsured or uninsured motorist coverage or workers' compensation for the Member's injury, loss, or other medical expenses the Member agrees: (1) the member or their legal representative must cooperate to ensure DAKOTACARE's subrogation rights are protected and furnish all information DAKOTACARE may require to protect its subrogation claim; (2) that DAKOTACARE will be reimbursed from any recovery before payment of any other existing claims, including any claim made for general or special damages including, but not limited to, loss of income, pain and suffering, disfigurement, disability, or impairment; (3) DAKOTACARE is entitled to collect from the proceeds of any settlement or judgment recovered by the Member or his legal representative, regardless of whether the Member alleges he/she has not been fully compensated in such settlement or judgment; and (4) the Member or his legal representative will not surrender or release any claim or right of recovery held by DAKOTACARE without the written permission of DAKOTACARE.

Docket 41, Ex. 6 at 24.

DakotaCare has brought this action pursuant to 29 U.S.C. § 1132(a)(3), which in relevant part allows a fiduciary to obtain equitable relief to enforce provisions of an ERISA plan. See Sereboff v. Mid Atlantic Medical Services, Inc., ___ U.S. ___, 126 S. Ct. 1869, 164 L. Ed. 2d 612 (2006). Hofer argues that DakotaCare is not eligible for subrogation or reimbursement under the terms of the Plan. Hofer also asserts a counterclaim for bad faith against DakotaCare and seeks attorneys' fees. Both parties argue that there are no material facts in dispute, and that they are therefore entitled to summary judgment on the asserted claims.

## STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56. Only disputes over facts that might affect the outcome of the case under the governing substantive law will properly preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Summary judgment is not appropriate if a dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id.

The moving party bears the burden of bringing forward sufficient evidence to establish that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  The nonmoving party is entitled to the benefit of all reasonable inferences to be drawn from the underlying facts in the record.  Vette Co. v. Aetna Cas. & Sur. Co., 612 F.2d 1076, 1077 (8th Cir. 1980).  The nonmoving party may not, however, merely rest upon allegations or denials in its pleadings, but must set forth specific facts by affidavits or otherwise showing that genuine issue exists.  Forrest v. Kraft Foods, Inc., 285 F.3d 688, 691 (8th Cir. 2002).

## DISCUSSION

### I.    APPLICABILITY OF ERISA

Although never explicitly stipulated to by Hofer, the court finds that there is no genuine issue of fact regarding ERISA applicability.  In the Eighth Circuit, "[t]he existence of an ERISA plan is a mixed question of fact and law." Kulinksi v. Medtronic Bio-Medicus, Inc., 21 F.3d 254, 256 (8th Cir. 1994).  The statutory scheme set out by ERISA applies to any employee benefit plan that is established or maintained by an employer engaged in interstate commerce. 29 U.S.C. § 1003(a); Northwest Airlines, Inc. v. Federal Ins. Co., 32 F.3d 349, 354 (8th Cir. 1994); Robinson v. Linomaz, 58 F.3d 365, 368 (8th Cir. 1995).  "In determining whether a plan . . . is a reality a court must determine whether from the surrounding circumstances a reasonable person could ascertain the

intended benefits, beneficiaries, source of financing, and procedures for receiving benefits." Johnston v. Paul Revere Life Ins. Co., 241 F.3d 623, 629 (8th Cir. 2001).

The plan at issue in this case was created by DakotaCare for the purpose of providing health benefits to Bangs, McCullen employees and their dependents. Coverage was dependent upon continued employment with Bangs, McCullen. Docket 41, Ex. 6 at 17; see also Defendant's Motion in Support of Summary Judgment, Docket 33 at 6. The court concludes that under the undisputed facts of this case, the reasonable person test is satisfied and the plan is governed by ERISA. In any event, DakotaCare has put forth sufficient evidence to show that there is no material issue of fact on ERISA applicability. The burden then shifts to Hofer to set forth specific facts to show that a genuine issue exists. Kraft Foods, Inc., 285 F.3d at 691. Because Hofer has put forth no evidence that the DakotaCare plan was not an employee benefit plan, she has not met this burden. The court therefore finds that ERISA governs this action.

## II. ERISA STANDARD OF REVIEW

Because this case is governed by ERISA, the court must determine the applicable standard of review. DakotaCare argues that it was acting as a fiduciary in determining it had a legal right under the Plan to subrogation and to seek reimbursement subsequent to Hofer's settlement with Dairyland. Hofer disputes that DakotaCare qualifies as a fiduciary under ERISA.

As is relevant to this case, ERISA defines a fiduciary as a person or administrator who "exercises any discretionary authority or discretionary control respecting management of [an ERISA plan] or exercises any authority or control respecting management or disposition of its assets." 29 U.S.C. § 1002 (21)(A). In the Eighth Circuit, "[d]iscretion is the benchmark for fiduciary status under ERISA." Johnston v. Paul Revere Life, 241 F.3d 623, 632 (8th Cir. 2001) (internal quotations omitted). "Fiduciary obligations extend primarily to the plan as it relates to all beneficiaries, not just to individual claimants." Barnhart v. UNUM Life Ins. Co. of America, 179 F.3d 583, 589 (8th Cir. 1999).

Pursuant to the general conditions set forth in the Plan, DakotaCare retained "discretionary authority to determine eligibility for benefits and to construe the terms and conditions of [the] contract." Docket 41-8 at 37. DakotaCare exercised that discretion when it interpreted the terms of the Plan to allow it to seek reimbursement from the funds Hofer obtained from Dairyland. DakotaCare was therefore acting as a fiduciary for the beneficiaries of the plan, as is relevant to this action.

When a benefit plan gives a fiduciary discretionary authority to interpret the terms of a plan, a deferential standard is to be applied by the reviewing court. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 111, 109 S. Ct. 948, 103 L. Ed. 2d 80 (1989); Barnhart, 179 F.3d at 587 (stating that when a fiduciary is given discretion in an ERISA plan, any decision should be reviewed

for an "abuse of discretion"). But "if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a factor in determining whether there is an abuse of discretion." Firestone, 489 U.S. at 115.

Hofer argues that even if DakotaCare is found to be a fiduciary, a heightened standard of review of the decision to seek reimbursement should be applied because a conflict of interest exists as a result of DakotaCare's dual role as fiduciary and insurer of the plan. See Brown v. Blue Cross & Blue Shield of Alabama, Inc., 898 F.2d 1556, 1562 (11th Cir. 1990) ("A strong conflict of interest exists when the fiduciary making a discretionary decision is also the insurance company responsible for paying the claims.") (internal citations omitted).

The Eighth Circuit has held that "[n]ot every funding conflict of interest . . . warrants heightened review." Tillery v. Hoffman Enclosures, Inc., 280 F.3d 1192, 1197 (8th Cir. 2002). In Woo v. Deluxe Corp., 144 F.3d 1157, 1160 (8th Cir. 1998), the court held that to obtain a less deferential standard of review in the ERISA context, a party must "present material, probative evidence demonstrating that (1) a palpable conflict of interest or a serious procedural irregularity existed, which (2) caused a serious breach of the plan administrator's fiduciary duty." The court in Woo adopted the "sliding scale approach" to determine the appropriate level of deference to give to the ERISA administrator when a conflict of interest existed. Id. at 1161. Under that

approach, "a reviewing court will always review for an abuse of discretion, but it will decrease the deference given to the administrator in proportion to the seriousness of the conflict of interest or procedural irregularity." Id. at 1161.

DakotaCare does not argue that a conflict of interest does not exist, but rather asserts that Hofer has failed to show the second prong of the Woo test. "The second prong requires demonstrating how a conflict of interest or serious procedural irregularity caused a serious breach of the administrator's fiduciary duty." Barnhart, 179 F.3d at 583.  To demonstrate a serious breach of the administrator's fiduciary duty, "[t]he evidence offered by the claimant must give rise to serious doubts as to whether the result reached was the product of an arbitrary decision or the plan administrator's whim." Tillery, 280 F.3d at 1197. Hofer has put forth no evidence to suggest that the conflict of interest present in this case caused a serious breach of the administrator's fiduciary duty to the beneficiaries of the plan.  As discussed below, the court finds that DakotaCare's interpretation of its right to subrogation and reimbursement is reasonable under the terms of the Plan, and therefore, its action in seeking reimbursement in and of itself does not show a serious breach.  Accordingly, the court finds that Hofer has not met the second prong of the Woo test and will review DakotaCare's interpretation of the Plan allowing for subrogation and reimbursement under an "abuse of discretion" standard.[2]

---

[2]The court notes that even if it had found that Hofer had satisfied the showing required by Woo to require a heightened standard of review, that

### III. RIGHT TO SUBROGATION

Hofer asserts that under the terms of the Plan, DakotaCare has no right of subrogation or reimbursement against the settlement she obtained from Dairyland. The Plan gives DakotaCare the right to recover any amount that the insured "has the right to recover . . . from any third party or any insurer." Docket 41, Ex. 6 at 24. Hofer concedes that she has a direct cause of action against Terry Hofer for negligence, and therefore a right to recover against him. Docket 33 at 7. Nonetheless, Hofer argues that Terry Hofer is not a "third party" under the terms of the Plan, and therefore DakotaCare has no right of subrogation against him.[3]

The Plan does not explicitly define "third party." Hofer argues that under the plain and ordinary meaning of "third party," Terry Hofer is not a third party to Janet Hofer's DakotaCare contract, but rather is a member of the same plan. DakotaCare argues that under the language of the Plan, which states "all

---

would not change the ultimate outcome of this case. In Woo, the court found the plan administrator's conduct to be "egregious," and therefore required "that the record contain substantial evidence bordering on a preponderance to uphold [the administrator's] decision." 144 F.3d at 1157. The court finds that even under this heightened standard of review, DakotaCare's interpretation of the subrogation clause of the Plan should be upheld.

[3]DakotaCare also asserts that it has a right to obtain benefits paid out under the Dairyland settlement directly from Dairyland. Hofer argues that DakotaCare cannot subrogate against Dairyland because she herself has no direct cause of action against Dairyland under Trouten v. Heritage Mutual Ins. Co., 632 N.W.2d 856 (S.D. 2001). Because the court finds that DakotaCare's construction of the contract which results in Terry Hofer being a third party to Hofer's claim is reasonable, the court does not reach the question of whether DakotaCare has a right of subrogation against Dairyland.

11

benefits stated in the contract are personal to the member," Terry Hofer is a third party with respect to Hofer's claim for benefits with DakotaCare.

When a plan "gives the administrator discretionary power to construe uncertain terms . . . the administrator's interpretation of uncertain terms in a plan will not be disturbed if reasonable." King v. Hartford Life & Accident Ins. Co., 414 F.3d 994, 998-99 (8th Cir. 2005) (en banc) (internal quotations omitted). "Federal courts have consistently applied Firestone's deference principles to actions concerning benefit determinations brought not only by participants but also by ERISA plans and, in particular, claims involving ERISA plans' assertions of purported reimbursement and subrogation rights." Sunbeam-Oster Co., Inc. Group Benefits Plan for Salaried and Non-Bargaining Hourly Employees v. Whitehurst, 102 F.3d 1368, 1373 (5th Cir. 1996); see also Baxter v. Lynn, 886 F.2d 182, 187 (8th Cir. 1989) (stating that if an ERISA plan gives deference to a fiduciary to interpret the meaning of a subrogation clause, that interpretation is accorded deference under Firestone). In order to determine whether an administrator's interpretation is reasonable, the court considers the following factors:

> [W]hether their interpretation is consistent with the goals of the Plan, whether their interpretation renders any language of the Plan meaningless or internally inconsistent, whether their interpretation conflicts with the substantive or procedural requirements of the ERISA statute, whether they have interpreted the words at issue consistently, and whether their interpretation is contrary to the clear language of the plan.

Id. at 999 (quoting Finley v. Special Agents Mut. Benefit Assoc., Inc., 957 F.2d 617, 621 (8th Cir. 1992)).

Black's Law Dictionary (8th ed. 2004) defines "third party" as: "[a] person who is not a party to a lawsuit, agreement, or other transaction but who is usually somehow implicated in it; someone other than the principal parties." As specifically set forth in the Plan, benefits due under the Plan "are personal to the member." Further, benefits payable under the Plan "may not be assigned by a Member to any person."

DakotaCare's interpretation of the Plan is consistent with the evident goal of the Plan, to obtain reimbursement for any expenses covered by parties other than DakotaCare. Further, the interpretation is consistent with other language in the plan, stating that benefits are personal to each member. After reviewing the plain language of the Plan, and the factors set forth in Finley, the court finds that DakotaCare's interpretation of the contract, treating Terry Hofer as a third party with respect to benefits paid by Dairyland to Hofer, is not unreasonable and therefore not an abuse of discretion by DakotaCare.

Hofer also argues that DakotaCare's attempt to seek subrogation and reimbursement for the proceeds of the Dairyland policy violates general principles of subrogation and equity. Hofer argues that the anti-subrogation rule, which "prevents an insurer from passing its loss to the insured, thereby avoiding coverage for the very risk for which it accepted premiums," prevents

DakotaCare from seeking reimbursement. Docket 33 at 7 (quoting Reliance Ins. Co. in Liquidation v. Chitwood, 433 F.3d 660, 663 (8th Cir. 2006)).

"A subrogation provision affects the level of benefits conferred by the plan, and ERISA leaves the issue to the private parties creating the plan." Waller v. Hormel Foods Corp. 120 F.3d 138, 140 (8th Cir. 1997). Hofer argues that because ERISA is silent on the issue of subrogation, under Waller a "court may resort to federal common law in resolving the issues of subrogation" and therefore should apply the anti-subrogation rule. Docket 33 at 8. The court in Waller, however, specifically stated that "there is good reason not to read ERISA plans like insurance policies" when it held that the subrogation clause in a policy should be enforced as written. 120 F.3d at 140. In this case, the Plan clearly set forth DakotaCare's subrogation and reimbursement rights and therefore under ERISA it must be enforced.[4]

Because this action falls within the ambit of ERISA, the explicit intentions of the parties regarding subrogation are controlling. Pursuant to the terms of the Plan, as reasonably interpreted by DakotaCare, DakotaCare has a

---

[4] Some courts have held that the "made whole rule" is a part of federal common law, and should be applied as a "gap filler" in ERISA plans. See e.g. King v. Pan American Life Ins. Co., 998 F. Supp. 1455, 1458 (N.D. Ga. 1996) (collecting cases). Nonetheless, those cases have also held that when an ERISA plan contains contractual language contrary to the rule, it will be respected as the position of the parties. See id. In this case, the Plan language explicitly overrides any common law provision, stating that DakotaCare is entitled to reimbursement from any other insurer regardless of whether the member has been fully compensated for his/her injury. Docket 41-8 at 27. Accordingly, there is no need to use a "gap filler" provision.

legal right to the funds obtained by Hofer from Dairyland.  Accordingly, DakotaCare's motion for summary judgment is granted.

### IV.     HOFER'S COUNTERCLAIM

Hofer asserts a counterclaim against DakotaCare alleging a claim of bad faith, as well as seeking attorneys' fees.  DakotaCare argues that Hofer's claim against DakotaCare for "bad faith" is preempted by ERISA.  Hofer does not respond to this argument and effectively conceded that her claim was not viable in her argument in favor of an award of attorneys' fees.  Docket 33 at 10 (stating "an independent cause of action for bad faith does not exist under ERISA").  ERISA preempts "any and all State laws insofar as they may now or hereafter relate to an employee benefit plan. . . ." 29 U.S.C. § 1144(a).  "In Pilot Life, the Supreme Court held that ERISA preempts state common-law causes of action arising from the alleged improper processing of a claim for benefits under an ERISA-regulated plan."  Kuhl v. Lincoln Nat. Health Plan of Kansas City, 999 F.2d 298, 302 (8th Cir. 1993) (citing Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 107 S. Ct. 1549, 95 L. Ed. 2d 39 (1987)).  Hofer's state law claim for bad faith relates to her ERISA claim and is therefore preempted.

Hofer also seeks attorneys' fees pursuant to the provisions of ERISA, 29 U.S.C. § 1132(g)(1).  Because the court has found that DakotaCare did not abuse its discretion in determining it had a right to the proceeds Hofer obtained from Dairyland, an award of attorneys' fees for the costs of this litigation is not warranted.

Further, Hofer is not entitled to attorneys' fees for any costs that may have been incurred in obtaining the settlement with Dairyland. The Plan states:

> DakotaCare shall not be responsible to pay attorney fees or expenses incurred by the Member in the recovery of benefits paid by DakotaCare on behalf of the Member unless DakotaCare has expressly agreed, in writing, to the payment of attorney fees and expenses.

Hofer does not argue, and there is no evidence in the record to indicate, that Hofer and DakotaCare expressly agreed to the payment of attorney fees and expenses. In Waller, the Eighth Circuit cited with approval the rule set forth by the Third Circuit in Ryan v. Federal Express Corp., 78 F.3d 123 (3d Cir. 1996), with regard to attorneys' fees in ERISA reimbursement cases. In Ryan the court refused to read a common law right of contribution into a plan that "unambiguously requires the [plaintiffs] to pay back all money they received." 78 F.3d at 127. Here, as in Ryan, the Plan explicitly states that attorneys' fees should not be deducted from any subrogation or reimbursement right possessed by DakotaCare absent written agreement by the parties. Pursuant to Eighth Circuit precedent, the court must enforce the plan as written. DakotaCare's motion for summary judgment on Hofer's counterclaim is therefore granted. Accordingly, it is hereby

ORDERED that DakotaCare's motion for summary judgment (Docket 36) is granted.

16

IT IS FURTHER ORDERED that Hofer's motion for summary judgment (Docket 32) is denied.

IT IS FURTHER ORDERED that an equitable lien in DakotaCare's favor is imposed on the identifiable funds that Hofer obtained as a result of her settlement with Dairyland.

Dated July 24, 2007.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
CHIEF JUDGE